# EXHIBIT 1

***State of New Jersey***
OFFICE OF ADMINISTRATIVE LAW

**FINAL DECISION**

OAL DKT. NO. EDS 01556-21

AGENCY DKT. NO. 2021-32438

**F.V. and M.V. on behalf of B.V.,**

Petitioners,

v.

**CHERRY HILL TOWNSHIP**
**BOARD OF EDUCATION,**

Respondent.

---

**Jamie Epstein,** Esq., for petitioners

**Eric L. Harrison,** Esq., for respondent (Methfessel & Werbel, P.C., attorneys)

Record Closed: March 29, 2022 Decided: April 6, 2022

BEFORE **SARAH G. CROWLEY,** ALJ:

## STATEMENT OF THE CASE

In this matter, petitioners F.V. and M.V. (parents), on behalf of B.V., brings an application against the respondent, Cherry Hill Township, Board of Education (CHBOE) seeking an independent educational evaluation, appropriate accommodation for remote learning and compensatory education. The issues relating to independent evaluations as well as the

appropriate placement were resolved.[1] Thus, the remaining issues in this application relate to whether the District provided a free and appropriate public education (FAPE) to the petitioner in the least restrictive environment (LRE) in the 2020-2021 school year, as well as compensatory education for that same school year. The issue of compensatory education for any prior years was the subject of a motion and has been dismissed.

## PROCEDURAL HISTORY

The request for due process was received by the Office of Special Education Programs (OSEP) and transmitted to the Office of Administrative Law (OAL) where it was filed as a contested case on February 2, 2021, pursuant to N.J.S.A. 52:14B-1 to 15; N.J.S.A. 52:14F-1 to 13. The matter was assigned to the Honorable Jacob Gertsman, who took testimony in this matter on May 14, 17, and 24, 2021. A motion for partial summary judgment clarified the scope of the within due process proceeding. On August 2, 2021, petitioner filed a motion to have Judge Gertsman recuse himself. Judge Gertsman, in consultation with Deputy Director Edward J. Delanoy, Jr., decided in an abundance of caution to transfer the matter to the undersigned to complete the case. The final day of testimony was heard before the undersigned via ZOOM on November 1, 2021. The respondent filed his brief on the agreed upon due date of March 15, 2022. An extension was given to the petitioner, who filed his brief on March 29, 2022, and the record closed on that date.

## TESTIMONY AND FACTUAL FINDINGS

**Trina Ragsdale (Ragsdale)** is the supervisor of special education for CHBOE. She oversees the delivery of special education programs in the District. She has been employed with CHBOE for seven years, and is personally familiar with B.V. She discussed an exchange with the parents regarding the placement of B.V. in a general education setting. Ms. Ragsdale testified that consistent with this request and the settlement of a prior due process

---

[1] After Independent evaluations were requested by the petitioners, the District filed a due petition seeking to deny same (EDS 10193-2020). Thereafter, the District agreed to provide the requested evaluations, and the petition was withdrawn. Any issues relating to the independent evaluations were addressed by a Final Decision entered by The Honorable Jeffrey N. Rabin on January 12, 2021. Any issues related to the independent evaluations are moot and not the subject matter of the within proceeding.

proceeding, B.V. was placed in a general education setting with a one-on-one aide for the 2020-2021 school year. The parents had a choice of learning virtually or returning to the classroom for the 2020-2021 school year. The District also offered a hybrid learning option. The parents opted for virtual learning.

Ms. Ragsdale discussed the program that had been agreed upon for B.V. and the progress that B.V. had made during the 2020-2021 school year. She discussed the time that a one-on-one aide in her classroom spent with B.V. and the time that the teacher spent with her. She testified that B.V. was making meaningful progress and receiving FAPE in the least restrictive environment through virtual learning with a one-on-one aide. She reiterated that B.V. was assigned a one-on-one aide who provided support to B.V. The aide is in the classroom and works with B.V. whenever the teacher is not providing a lesson or instruction. This is consistent with what would happen if they were in person, except the aide would be sitting next to B.V. in the classroom. However, the one-on-one aide would not be instructing B.V. at the same time as the teacher. The aide was on hand to provide assistance whenever needed. Ragsdale stated that the documentation of the aide's involvement with B.V. is reflected within the IEP educational performance summary provided by B.V.'s teacher. The parents declined to sign the IEP after the IEP meeting. It was not articulated what, if any issues they had with it, but it was never signed. Although, the IEP was not redrafted to reflect the switch to remote learning, the IEP was implemented consistent with the existing goals and objectives, and B.V. was meeting her goals and objectives and making meaningful progress during the 2020-2021 school year.

**Dr. Leanne Bernosky (Bernosky)** is the case manager for B.V. She was qualified as an expert in general and special education. She was involved in the preparation of the September 2020 IEP for B.V. The IEP was changed pursuant to an agreement with the parents and their respective attorneys to place B.V. in a general education setting with a one-on-one aide. It is her practice to work with and interact with the parents when developing the IEP and goals and objectives. However, the parents declined to participate even after the IEP was changed to reflect their request for a general education setting with a one-on-one aide. When the students returned to school following virtual instruction during the pandemic, B.V.'s parents opted to continue virtual learning. The students were offered the option of a full or hybrid learning in school or to remain in virtual learning full time. The parents never indicated there was any issues related to assistive

technology, and it did not appear that B.V. or the parents were having any issues. She discussed the progress reports and the progress that B.V. was making in general education class, speech, and language therapy as well as OT and PT. She opined that she was making meaningful progress in all areas.

Dr. Bernosky discussed the OT, PT as well as the issue of whether a Behavior Intervention Plan was appropriate for B.V., and in terms of parental assistance with technology for virtual instruction, the parents never mentioned that they were having any issues and B.V. did not appear to be struggling. Dr. Bernosky identified and discussed the progress notes, and she opined that B.V. was making meaningful progress and that she was receiving FAPE in the LRE. The parents declined to attend the annual IEP meeting and never provided any independent evaluations. Dr. Bernosky discussed the issue of the stay-put and what IEP was governing. The parents had requested, and the District agreed, to a general education setting with a one-on-one aide, but they refused to sign the IEP which reflected this change. The District followed the goals and objective in the prior IEP pursuant to the stay-put provision, but B.V. was in a general education setting with a one-on-one aide. Dr. Bernosky opined that B.V. was making meaningful progress in the least restrictive environment.

**Renee Johnson (Johnson)** was B.V.'s classroom teacher. She was qualified as an expert in the area of general and special education. She has been a special education teacher for eleven years. B.V. entered her class, via remote learning, in September 2020. She was assigned a one-on-one aide. She discussed the challenges of remote learning, but that all of the students including B.V., had adjusted and were making progress. Naturally, all students would perform better in person, but with the aide and herself providing one-on-one time with B.V., she had adjusted and was making meaningful progress. She had four other remote students and spent time with each of them. She discussed B.V.'s progress and identified the narratives that she provided for Trimester 1 and Trimester 2. She discussed the role of the one-on-one aide and how it was a little different in a remote setting. If they were in-person, the aide would be sitting with her and working with her all the time, but with remote learning in a general education setting, B.V. needed to focus on her teacher and the class lesson on her screen and then the one-on-one aide would work with her. Ms. Johnson also worked with B.V. on a one-on-one basis. Ms. Johnson identified and discussed the report cards and the progress that B.V. was making. She testified that B.V. was making

meaningful progress, was meeting all of her goals and objectives, and was doing so in the least restrictive environment.

**For petitioner:**

**Dr. Mary Pipan (Pipan)** works at the Children's Hospital of Philadelphia (CHOP) and was accepted as an expert witness in Developmental Pediatrics with an expertise in down syndrome. She conducts evaluations which are often used by child study teams. However, she was not qualified as an expert in education, IEPs, or FAPE, and does not work in a school setting. She conducted an evaluation on B.V. on May 19, 2020, via tele-medicine. She also reviewed observations conducted and prepared by the CHBOE. When questioned about her opinion on B.V.'s placement, she testified that B.V. would be a great candidate for a general education classroom and that is where she belonged. She further elaborated that she would need an aide in a general education setting. Her opinion regarding general education and a one-on-one aide was predicated on a live classroom setting, not a remote setting. B.V. was placed in a general education setting with a one-on-one aide, but she was receiving her instruction remotely due to the pandemic.

**F.V.** is the father of B.V. He provided a background of his family, including that of B.V. She was part of the early intervention program in the District. B.V. received PT, OT from six months through age three. At the age of three, she transitioned to the Cherry Hill School District in their special educational program. He identified the draft IEP from March 20, 2020. He also identified the IEP that was provided following the IEP meeting which placed her in the general education setting. They wanted her in a general education setting with a one-on-one aide. This was the subject of a prior due process proceeding and they agreed to place her in the general education setting with a one-on-one aide. They opted to keep her at home for virtual school. He was present while she attended virtual school at home. He did not think the aide spent enough time with her during virtual learning. He did not receive any special training to assist her in remote learning and he did not ask for any training. He did not think that she was making meaningful progress.

**FINDINGS OF FACT**

It is the duty of the trier of fact to weigh each witness's credibility and make a factual finding. Credibility is the value a fact finder assigns to the testimony of a witness, and it contemplates an overall assessment of the witness's story considering its rationality, consistency, and how it comports with other evidence. Carbo v. United States, 314 F.2d 718 (9th Cir. 1963); see, In re Polk, 90 N.J. 550 (1982). Credibility findings "are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463 (1999). A fact finder is expected to base decisions on credibility on his or her common sense, intuition, or experience. Barnes v. United States, 412 U.S. 837 (1973). A trier of fact may reject testimony because it is inherently incredible, or because it is inconsistent with other testimony or with common experience, or because it is overborne by other testimony. Congleton v. Pura-Tex Stone Corp., 53 N.J. Super 282, 287 (App. Div. 1958).

I found the testimony of Ragsdale, Bernosky and Johnson to be sincere, credible, and supported by documentary evidence as well as their firsthand knowledge of the progress B.V. was making. They all testified in a manner that demonstrated their firsthand knowledge of B.V.'IEP and the implementation of same through virtual learning. They all demonstrated a familiarity and understanding of B.V. and her placement in a general education setting in September 2020. Their expert and factual testimony was supported by the progress reports and other documentation and demonstrated that B.V. was engaged and participated in learning and was making meaningful progress and that she was being provided FAPE in the LRE. Accordingly, I **FIND** as **FACT** that B.V. was making meaningful progress and was receiving FAPE in the LRE.

Dr. Pipan was admitted as an expert witness in Developmental Pediatrics with an expertise in down syndrome or Trisomy-21. She was not qualified as an expert in special education, and thus, provided no testimony or expert opinion on the issue of FAPE or whether B.V. was making meaningful progress in the 2020-2021 school year. She opined that a general education setting with a one-on-one aide would be ideal for B.V. However, she qualified that her opinion was based on in-person instruction. In addition, Dr. Pipan did not provide any firsthand or expert opinions as

to whether B.V. was receiving FAPE, or if she was being provided FAPE in the LRE. Accordingly, I find that her testimony has no bearing on the issue of whether B.V. was being provided FAPE in the LRE during the 2020-2021 school year.

B.V.'s father was present during virtual learning for B.V. However, he provided no credible evidence or testimony to support the allegation that B.V. was not making meaningful progress and was not receiving FAPE in the LRE. His opinion was that special training was needed to assist B.V. in online learning. He did not provide any examples of what sort of training was needed, nor did he ever request any assistance or training. Finally, he provided no evidence to support the claim that B.V. was not making any meaningful progress and was not being provided FAPE in the LRE.

Having considered the testimonial and documentary evidence presented I **FIND** the following additional **FACTS:**

1. B.V. was placed in a general education class beginning on September 10, 2020, and provided with a one-on-one aide.
2. This placement was predicated on the resolution of a prior due process proceeding and was agreed to by all the parties.
3. A one-on-one aide was present and provided assistance to B.V. during remote learning in the general education placement.
4. The teacher also provided one-on-one assistance to B.V.
5. B.V. was present in class and needed no assistance in accessing remote learning.
5. B.V. was making meaning progress consistent with her IEP
6. B.V. was receiving FAPE in the LRE.

## LEGAL ANALYSIS AND CONCLUSION

The Individuals with Disabilities Education Act (IDEA), as amended by the Individuals with Disabilities Education Improvement Act (IDEIA), 20 U.S.C. §§ 1400-1482, provides the framework for special education in New Jersey. It is designed "to ensure that all children with disabilities have available to them free appropriate public education that emphasizes special education and related

services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); see, generally Id. § 1400(c), (d) (describing need for, and purposes of, the IDEA). A state may qualify for federal funds under the IDEA by adopting "policies and procedures to ensure that it meets" several enumerated conditions.

This Act requires that boards of education provide students between the ages of three and twenty-one who suffer from a disability, with a free appropriate public education, or FAPE. In fulfilling its FAPE obligation, the board must develop an IEP for the student, and the IEP must be reasonably calculated to confer some educational benefit. Hendrick Hudson District Board of Education v. Rowley, 458 U.S. 176, 192, 73 L.Ed. 2d 690, 703, 102 S.Ct. 3034 (1982) (Rowley).

The Third Circuit Court of Appeals has clarified the meaning of this "educational benefit." It must be "more than trivial and must be significant" and "meaningful." Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 180 (3rd Cir. 1988), cert. denied, 488 U.S. 1030 (1989) (Polk); Ridgewood Board of Education v. N.E., 172 F.3d 238, 247-48 (3rd Cir. 1999) (Ridgewood). In evaluating whether a FAPE was furnished, an individual inquiry into the student's potential and educational needs must be made. Ridgewood, 172 F.3d at 247. In providing a student with a FAPE, a school district must provide such related services and support as are necessary to enable the disabled child to benefit from the education. Rowley, 458 U.S. at 188-89. If an administrative law judge finds that a district has not made FAPE available to a student who previously received special education in a timely manner prior to his enrollment in a nonpublic school, the judge may require the district to reimburse the parents for the cost of that enrollment if the private placement is appropriate. N.J.A.C. 6A:14-2.10.

Parents who are dissatisfied with an IEP may seek an administrative due process hearing. 20 U.S.C. § 1415(f). The burden of proof is placed on the school district. N.J.S.A. 18A:46-1.1. The Board will satisfy the requirement that a child with disabilities receive a FAPE by providing personalized instruction with sufficient support services to permit that child to benefit educationally from instruction. Hendrick Hudson Cent. Sch. Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 203, 102 S. Ct. 3034, 3049, 73 L. Ed. 2d 690, 710 (1982). To meet its obligation to deliver a FAPE, a school district must offer an IEP that is reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. Endrew F. v. Douglas Cnty. Sch. Dist., 580 U.S.

(2017);137 S.Ct. 988; 197 L. Ed 2d 335. In Endrew, the District Court for the District of Colorado initially upheld the school denial of a reimbursement for an out-of-district placement. However, the Supreme Court reversed the finding that an IEP should be appropriately ambitious in light of the child's circumstances, and "tailored to the unique needs of a particular child."

In Endrew F. v. Douglas County School District RE-1, 137 S. Ct. 988, 1001 (2017), the United States Supreme Court construed the FAPE mandate to require school districts to provide "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." The Court's holding in Endrew F. largely mirrored the Third Circuit's long-established FAPE standard, which requires that school districts provide an educational program that is "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities." Dunn v. Downingtown Area Sch. Dist. (In re K.D.), 904 F.3d 248, 254 (3rd Cir. 2018) [quoting Ridley Sch. Dist. v. M.R., 680 F.3d 260, 269 (3rd. Cir. 2012)]. In addressing the quantum of educational benefit, the Third Circuit has made clear that more than a "trivial" or "de minimis" educational benefit is required, and the appropriate standard is whether the IEP provides for "significant learning" and confers "meaningful benefit" to the child. Endrew F., 137 S. Ct. at 1000–01; T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000); Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 247 (3d Cir. 1999), superseded by statute on other grounds as recognized by P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727 (3d Cir. 2009); Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 180, 182–84 (3d Cir. 1988). Hence, an appropriate educational program will likely "produce progress, not regression or trivial educational advancement." Dunn, 904 F.3d at 254 (quoting Ridley, 680 F.3d at 269).

The effect of the pandemic on the requirements of FAPE and LRE is worthy of some discussion. On or about March 15, 2020, the State of New Jersey, by Executive Order of the Governor, declared a State of Emergency due to a serious pandemic which came about due to the Covid-19 virus. Among other things, the Order included a shutdown of all schools throughout the State, in an effort to contain the virus, and protect students, teachers, staff and parents from being exposed to others who might be carrying the virus. Little was known at the time about the potential threat, and it was hoped that after a two-week period, that schools and the rest of the State could open up again, with minimal disruption. Re-opening did not happen

at that time, and school districts were left to develop alternate methods of teaching through virtual instruction for the balance of the 2019-2020 school year. This was especially challenging for teachers and students who are involved with delivering and receiving special education and related services, impacting thousands of students and families of students like B.V., who are eligible to receive these services.

Recognizing the need to address the situation, the Commissioner of Education, and the Department of Education itself, issued some modified guidelines to districts regarding the alternate method of teaching and delivering services to students, including but not limited to the ongoing obligation to offer and provide FAPE. The directives and guidelines that came out, however, did not require districts to revise the IEPs for students receiving Special Education services. The U.S. Department of Education (USDOE) issued a document advising local education agencies (LEAs) on how to comply with IDEA regulations during the COVID-19 public health emergency. The document was not intended to impose additional requirements on LEAs, nor act as legally binding rules, but rather to provide informal guidance of the USDOE's interpretation of the IDEA and its implementing regulations in the specific context of the COVID-19 health crisis. US Dept. of Educ., Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak, (Mar. 2020), https://sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf. The USDOE provided that if LEAs choose to continue providing educational opportunities to the general student population during a school closure, "the school must ensure that students with disabilities also have equal access to the same opportunities, including the provision of FAPE." Id., at 2. The USDOE stated that during this time schools were required to ensure that "to the greatest extent possible, each student with a disability can be provided the special education and related services identified in the student's IEP." Ibid.

Based upon the above directives from the State of New Jersey and the US Department of Education, it is clear that services needed to be provided to special education students during these unprecedented times. However, there was no obligation to amend every IEP based on the student's desire to return to school or continue with remote learning. In addition, the directive from the State as well as the USDOE clearly

states that the services to be provided to special education students in remote learning was to be "to the greatest extent possible**."** The foregoing directive recognizes that we are in unprecedented times and that the services were to be provided to the greatest extent possible and that they were to mirror what was provided to other students without disabilities.

In the matter before me, I have found as **FACT** that B.V. was making meaningful progress and was provided FAPE during the 2020-2021 school year in the LRE. I therefore **CONCLUDE** that the District has met its burden of demonstrating by a preponderance of the evidence that B.V. was properly placed in a general education classroom with a one-on-one aide and was making meaningful progress during the period in question. I further, **CONCLUDE** that B.V. was provided FAPE in the LRE. The petitioner presented no credible evidence to dispute that B.V. was being provided FAPE in the LRE. I further **CONCLUDE** that any issues relating to requested independent evaluations were resolved by the District agreeing to provide same and the parents failed to follow through on the offer to provide such evaluations. The issue of independent evaluations was also the subject matter of a prior Order entered by Judge Rabin.

## ORDER

It is therefore **ORDERED** that the petition should be and hereby is **DISMISSED** and the relief requested therein is **DENIED.**

This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2021) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States. 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2021). If the parent or adult student feels that this decision is not being fully implemented with respect to program or services, this concern should be communicated in writing to the Director, Office of Special Education.

April 6 , 2022________________ Sarah G. Crowley

DATE **SARAH G. CROWLEY**, ALJ

Date Received at Agency: April 6, 2022

Date emailed to Parties: ______________________

SGC/sm

## APPENDIX

## WITNESSES

**For Petitioners:**

Dr. Mary Pipan

F.V.

**For Respondent:**

Trina Ragsdale

Renee Johnson

Dr. Leanne Bernosky

## EXHIBITS

**For Petitioners:**

P-7 March 30, 2020, Draft IEP

P-8 March 30, 2020, Final IEP

P-9 Dr. Mary Pipan, CV

P-10 June 26, 2020, Letter of Dr. Pipan

P-13 August 31, 2020, Letter of Dr. Pipan

P-14 April 26, 2021, Letter of Dr. Pipan

**For Respondent:**

R-5 October 6, 2020, letter of petitioners requesting independent educational evaluations

R-6 December 2, 2020, letter of counsel withdrawing prior due process petition, OAL Dkt. No. EDS 10193-22

R-7 December 11, 2020, letter of respondent's counsel to petitioners' counsel reiterating commitment to fund independent educational evaluations

R-8 January 12, 2021, final decision and OAL Dkt. No. EDS 10193-20

R-9 March 3, 2021, NJDOE broadcast "guidance regarding compensatory education determinations for students with disabilities as a result of Covid-19"

R-80 September 10, 2020, email exchange between Trina Ragsdale and parents

R-85 November 11, 2020, email of District's attorney to parents' attorney enclosing IEP meeting notice, IEP amendment consent form and a draft IEP

R-85(a) November 18, 2020, email of case manager Leanne Bernosky to petitioners with final IEP

R-88 December 20, 2020, related services progress report, marking period one

R-89 December 20, 2020, related services progress report, marking period two

R-95 February 9, 2021, email of case manager Leanne Bernosky to parents

R-96 February 11, 2021, email of parents to Ms. Bernosky

R-97 February 17, 2021, email of Ms. Bernosky to parents

R-98 February 19, 2021, email of parents to Ms. Bernosky

R-99 February 27, 2021, parental declination of in-person education

R-100 March 9, 2021, email of parents to Bernosky

R-101 March 10, 2021, invitation for annual review of IEP

R-102 Progress report for second marking period

R-103 Report card, first and second marking periods

R-104 Spring 2021 running record information

R-105 Kindergarten ELA assessment materials

R-107(a) Dr. Leanne Bernosky, CV

R-107(b) Renee Johnson, CV

# EXHIBIT 2

M&W

METHFESSEL & WERBEL
A Professional Corporation

JOEL N. WERBEL>
JOHN METHFESSEL, JR.>
FREDRIC PAUL GALLIN*+^
WILLIAM S. BLOOM>*
ERIC L. HARRISON*+
MATTHEW A. WERBEL>
LORI BROWN STERNBACK*+
I. BLAKELEY JOHNSTONE,III+*
GINA M. STANZIALE>
PAUL J. ENDLER JR.>
JAMES P. CULLEN, JR.=^

Of Counsel
STEPHEN R. KATZMAN#
ED THORNTON>

Retired
JOHN METHFESSEL, SR.>
(1935-2017)
DON CROWLEY*+
MARC DEMBLING*+
(1944-2022)

Counsel
ADAM M. CARMAN+^
SARAH K. DELAHANT+
SHAJI M. EAPEN+
JAMES FOXEN^
ANGELA M. GURRERA>
GERALD KAPLAN>
JARED P. KINGSLEY*+
JOHN R. KNODEL*+
LESLIE A. KOCH=
CHARLES T. MCCOOK, JR.*>
MARC G. MUCCIOLO>
RICHARD A. NELKE~
STEVEN K. PARNESS+
RAINA M. PITTS^
AMANDA J. SAWYER^
JARED S. SCHURE>

Associates
JILLIAN T. CLARK>
EDWARD D. DEMBLING>
MICHAEL R. EATROFF>
FRANK J. KEENAN+^
SCOTT KETTERER>

Associates, Cont'd
ALLISON M. KOENKE>
KYLE A. LIVINGSTONE+
ASHLEY E. MALANDRE^
ANTHONY J. MANCUSO>
CHRISTEN E. MCCULLOUGH^
KAJAL J. PATEL+
SARAH E. SHEPP+
TIFFANY D. TAGARELLI>
STEVEN A. UNTERBURGER+
LEVI E. UPDYKE+^

* Certified by the Supreme Court of New Jersey as a Civil Trial Attorney
+Member of NY & NJ Bar
^Member of PA & NJ Bar
>Member of NJ Bar only
#Member of NJ & LA. Bar
<Member of NJ & DC Bar
≥Member of NJ, PA & DC Bar
~Member of NY, NJ & DC Bar
=Member of NY, NJ & MA Bar

**Please reply to New Jersey**

July 21, 2022

**VIA E-FILING**
**VIA LAWYERS SERVICE (COURTESY COPY)**
Honorable Sharon A. King, U.S.M.J.
United States District Court
District of New Jersey Camden
Mitchell H. Cohen Federal Courthouse,
P.O. Box 2736
1 John F. Gerry Plz., Fourth & Cooper Streets
Camden, NJ 08101

RE: **F.V. AND M.V. O/B/O B.V. VS. CHERRY HILL TWP BOE MEMBERS, ET AL.**
Our File No. : 89897 ELH
Docket No. : 1:22-CV-04401-KMW-MJS

Dear Judge Williams and Judge King:

This office represents the Defendants. I write in advance of the initial conference of August 16th with respect to the administrative record of the OAL hearing whose outcome Plaintiffs seek to appeal at Count One of the Complaint.

Earlier this week we filed a motion to dismiss Count Two and to strike certain allegations in Count One and certain attachments to the Complaint. (Document 9) We also filed an Answer to Count One. (Document 10) The Court thereafter scheduled an initial conference for August 16, 2022.

A controversy has arisen, as it did in Civil Action No. 21-18096, with regard to transmission of the administrative record of the due process hearing held before the New Jersey Office of Administrative Law. Plaintiff's counsel believes that he should be recreating and electronically filing the administrative record. I disagree and contend that the administrative record should be sent to the Court by the NJDOE.

2025 Lincoln Highway · Suite 200 · P.O. Box 3012 · Edison, NJ 08818 · (732) 248-4200 · FAX (732) 248-2355
112 West 34th Street · 17th Floor · New York, NY 10120 · (212) 947-1999 · FAX (212) 947-3332
One Liberty Place · 1650 Market St., 36th Floor · Philadelphia, PA 19103 · (215) 665-5622 · FAX (215) 665-5623
101 Federal Street · Suite 1900 · Boston, MA 02110 · (617) 204-5630 · FAX (617) 977-9398
www.njinslaw.com

In the 25 years that I have litigated special education appeals before the U.S. District Court, Mr. Epstein is the first and only colleague who has taken the position that the party filing the appeal should recreate and file his own version of the administrative record, rather than entrusting the agency which conducted the hearing to forward an official copy of the record.

While it would be counterproductive to speculate on Mr. Epstein's reasoning, I am simply bringing this issue to the Court's attention in advance of our initial conference on August 16th so as to avoid any unnecessary motion practice.

Attached as **Exhibit A** is my self-explanatory email correspondence with the NJDOE requesting that it forward the administrative record to Judge Williams, along with Mr. Epstein's response and the NJDOE's response to Mr. Epstein.

Attached as **Exhibit B** is my self-explanatory email exchange of yesterday with Mr. Epstein.

I suspect that the NJDOE will have delivered the administrative record to Judge Williams' chambers by the time we speak on August 16th. Because Plaintiff B.V. is a minor whose records are confidential student records pursuant to the Family Educational Records and Privacy Act (FERPA), to the extent that an order to seal them is necessary, the Defendants certainly would consent to entry of such an Order.

We look forward to speak with Your Honor on August 16th.

Respectfully submitted,
**METHFESSEL & WERBEL, ESQS.**

Eric L. Harrison
harrison@methwerb.com
Ext. 138

ELH:as/gg
Enc. (Exhibits A-B)

cc: VIA EMAIL: JE@JamieEpsteinLaw.com
Jamie Epstein, Esq.
17 Fleetwood Drive
Hamilton, NJ 08690

# EXHIBIT 3

## Eric Harrison

**From:** Arnold, Martha <Martha.Arnold@doe.nj.gov>
**Sent:** Thursday, July 21, 2022 11:24 AM
**To:** Eric Harrison; Ruffner, Lisa; je
**Cc:** Anthony, Catherine; Murray, Kimberly; Rimol, Cynthia
**Subject:** RE: [EXTERNAL] Case 1:22-cv-04401-KMW-SAK - administrative record

**CAUTION:** This is an EXTERNAL EMAIL. STOP. THINK before you CLICK links or OPEN attachments .

The file has been retrieved, It is now being prepared to go to the print shop for copying.

*Martha*

---

**From:** Eric Harrison <harrison@methwerb.com>
**Sent:** Thursday, July 21, 2022 8:05 AM
**To:** Ruffner, Lisa <Lisa.Ruffner@doe.nj.gov>; je <je@jamieepsteinlaw.com>
**Cc:** Anthony, Catherine <Catherine.Anthony@doe.nj.gov>; Arnold, Martha <Martha.Arnold@doe.nj.gov>; Murray, Kimberly <Kimberly.Murray@doe.nj.gov>; Rimol, Cynthia <Cynthia.Rimol@doe.nj.gov>
**Subject:** RE: [EXTERNAL] Case 1:22-cv-04401-KMW-SAK - administrative record

Good morning Lisa - could you update us on your efforts to obtain the administrative record and forward it to Judge Williams?

Eric Harrison | Partner
Methfessel & Werbel, P.C.
2025 Lincoln Highway | Suite 200 | Edison, NJ 08818
Direct: 732-650-6511
Fax: 732-248-2355 | bio | www.methwerb.com




---

**New Jersey's Top Insurance Law Firm**
**- New Jersey Law Journal**
**2014, 2015, 2016, 2017, 2020, 2021**

---

**From:** Ruffner, Lisa [mailto:Lisa.Ruffner@doe.nj.gov]
**Sent:** Monday, July 11, 2022 11:30 AM
**To:** je <je@jamieepsteinlaw.com>; Eric Harrison <harrison@methwerb.com>
**Cc:** Anthony, Catherine <Catherine.Anthony@doe.nj.gov>; Arnold, Martha <Martha.Arnold@doe.nj.gov>; Murray, Kimberly <Kimberly.Murray@doe.nj.gov>; Rimol, Cynthia <Cynthia.Rimol@doe.nj.gov>
**Subject:** RE: [EXTERNAL] Case 1:22-cv-04401-KMW-SAK - administrative record

**CAUTION:** This is an EXTERNAL EMAIL. STOP. THINK before you CLICK links or OPEN attachments .

Dear Mr. Epstein:

This office is sending the administrative record along with the cover letter to both parties. It is not being sent ex-parte, as the district court is not a party to the litigation. It is being sent at the request of a party to this litigation. Thank you and have a wonderful day!!

Lisa Ruffner, Esq.
Education Program Development Specialist II
Office of Special Education
Division of Educational Services
New Jersey Department of Education
100 Riverview Plaza, Trenton, NJ 08625
Work: 609-376-3768
Email: Lisa.ruffner@doe.nj.gov
Website: nj.gov/education
State of New Jersey
Department of Education

---

**From:** je <je@jamieepsteinlaw.com>
**Sent:** Friday, July 8, 2022 4:02 PM
**To:** Arnold, Martha <Martha.Arnold@doe.nj.gov>; Eric Harrison <harrison@methwerb.com>
**Cc:** Ruffner, Lisa <Lisa.Ruffner@doe.nj.gov>; Anthony, Catherine <Catherine.Anthony@doe.nj.gov>
**Subject:** [EXTERNAL] Case 1:22-cv-04401-KMW-SAK - administrative record

***** CAUTION *****

This message came from an **EXTERNAL** address (je@jamieepsteinlaw.com). **DO NOT** click on links or attachments unless you know the sender and the content is safe. **Suspicious?** Forward the message to spamreport@cyber.nj.gov.

Ms. Arnold;

Is the NJDOE going to file the record with the DNJ ex-parte?

Because it is unacceptable that NJDOE is only providing Plaintiffs the cover letter.

JamieEpsteinLaw.com
*Representing regular, special and higher education students and their families since 1989.*
(856)979-9925

On 7/8/2022 3:56 PM, Arnold, Martha wrote:

You're welcome. Will do.

Martha Arnold
Senior Management Assistant
Division of Educational Services
Office of Special Education
New Jersey Department of Education
100 Riverview Plaza|Trenton, NJ - 08625
Work: 609-376-3742

Fax: 609-984-8422
Email: martha.arnold@doe.nj.gov
Website: https://www.nj.gov/education
State of New Jersey
Department of Education

---

**From:** Eric Harrison <harrison@methwerb.com>
**Sent:** Friday, July 8, 2022 3:34 PM
**To:** Arnold, Martha <Martha.Arnold@doe.nj.gov>; 'j' <je@jamieepsteinlaw.com>
**Cc:** Ruffner, Lisa <Lisa.Ruffner@doe.nj.gov>; Anthony, Catherine <Catherine.Anthony@doe.nj.gov>
**Subject:** [EXTERNAL] RE: 89897 USDC appeal from EDS 01556-2021 - administrative record

*** CAUTION ***

This message came from an **EXTERNAL** address (harrison@methwerb.com). **DO NOT** click on links or attachments unless you know the sender and the content is safe. **Suspicious?** Forward the message to spamreport@cyber.nj.gov.

Thank you Martha - can you just let us know when that's been done, and ideally send us a copy of your cover letter to Judge Williams?

Eric Harrison | Partner
Methfessel & Werbel, P.C.
2025 Lincoln Highway | Suite 200 | Edison, NJ 08818
Direct: 732-650-6511
Fax: 732-248-2355 | bio | www.methwerb.com

**New Jersey's Top Insurance Law Firm**
**- New Jersey Law Journal**
**2014, 2015, 2016, 2017, 2020, 2021**

---

**From:** Arnold, Martha [mailto:Martha.Arnold@doe.nj.gov]
**Sent:** Friday, July 08, 2022 11:44 AM
**To:** Eric Harrison <harrison@methwerb.com>; 'j' <je@jamieepsteinlaw.com>
**Cc:** Ruffner, Lisa <Lisa.Ruffner@doe.nj.gov>; Anthony, Catherine <Catherine.Anthony@doe.nj.gov>
**Subject:** RE: 89897 USDC appeal from EDS 01556-2021 - administrative record

**CAUTION:** This is an EXTERNAL EMAIL. STOP. THINK before you CLICK links or OPEN attachments .

The complete administrative law file has been requested and will be retrieved from our record storage. Once we receive it, the entire file will be copied and sent to USDC.

Thank you.

Martha Arnold
Senior Management Assistant
Division of Educational Services
Office of Special Education

New Jersey Department of Education
100 Riverview Plaza|Trenton, NJ - 08625
Work: 609-376-3742
Fax: 609-984-8422
Email: martha.arnold@doe.nj.gov
Website: https://www.nj.gov/education
State of New Jersey Department of Education

---

**From:** Eric Harrison <harrison@methwerb.com>
**Sent:** Friday, July 8, 2022 8:53 AM
**To:** 'j' <je@jamieepsteinlaw.com>
**Cc:** Ruffner, Lisa <Lisa.Ruffner@doe.nj.gov>; Arnold, Martha <Martha.Arnold@doe.nj.gov>; Anthony, Catherine <Catherine.Anthony@doe.nj.gov>
**Subject:** [EXTERNAL] RE: 89897 USDC appeal from EDS 01556-2021 - administrative record

*** CAUTION ***

This message came from an **EXTERNAL** address (harrison@methwerb.com). **DO NOT** click on links or attachments unless you know the sender and the content is safe. **Suspicious?** Forward the message to spamreport@cyber.nj.gov.

The NJDOE, as the agency from which the appeal has been taken, should file the administrative record with the USDC. The administrative record should ***not*** be forwarded to a party or a party representative.

Eric Harrison | Partner
Methfessel & Werbel, P.C.
2025 Lincoln Highway | Suite 200 | Edison, NJ 08818
Direct: 732-650-6511
Fax: 732-248-2355 | bio | www.methwerb.com

**New Jersey's Top Insurance Law Firm**
**- New Jersey Law Journal**
**2014, 2015, 2016, 2017, 2020, 2021**

---

**From:** j [mailto:je@jamieepsteinlaw.com]
**Sent:** Friday, July 08, 2022 8:44 AM
**To:** Eric Harrison <harrison@methwerb.com>
**Cc:** Ruffner, Lisa <Lisa.Ruffner@doe.nj.gov>; Arnold, Martha <Martha.Arnold@doe.nj.gov>; Anthony, Catherine <Catherine.Anthony@doe.nj.gov>
**Subject:** Re: 89897 USDC appeal from EDS 01556-2021

**CAUTION:** This is an EXTERNAL EMAIL. STOP. THINK before you CLICK links or OPEN attachments .

The appellant not the defendant has to file the administrative record

On Fri, Jul 8, 2022, 8:26 AM Eric Harrison <harrison@methwerb.com> wrote:

Thanks all - attached is the Complaint filed on 7/3/22. Per PACER, it has been assigned to:

Hon. Karen M. Williams, U.S.D.J.
United States District Court
Mitchell H. Cohen Federal Courthouse
P.O. Box 2736
400 Cooper Street
Camden, NJ 08101

When you send the administrative record to Judge Williams, please share a copy of your forwarding letter with me and Mr. Epstein, who is copied on this email.

Eric Harrison
Partner
Methfessel & Werbel, P.C.
2025 Lincoln Hwy
Suite 200
Edison, NJ 08817
Phone: 732-650-6511
Fax: 732-248-2355

-----Original Message-----
From: Ruffner, Lisa [mailto:Lisa.Ruffner@doe.nj.gov]
Sent: Friday, July 08, 2022 7:58 AM
To: Arnold, Martha <Martha.Arnold@doe.nj.gov>
Cc: Eric Harrison <harrison@methwerb.com>; Anthony, Catherine <Catherine.Anthony@doe.nj.gov>
Subject: FW: USDC appeals

CAUTION: This is an EXTERNAL EMAIL. STOP. THINK before you CLICK links or OPEN attachments .

Martha:

Please see Eric's email below. Thanks.

Eric:

Martha will need information regarding which District Court judge. Thanks.

Lisa Ruffner, Esq.
Education Program Development Specialist II Office of Special Education Division of Educational Services New Jersey Department of Education
100 Riverview Plaza, Trenton, NJ 08625
Work: 609-376-3768
Email: Lisa.ruffner@doe.nj.gov

Website: https://urldefense.proofpoint.com/v2/url?u=http-3A__nj.gov_education&d=DwIFAg&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=_t79QI8F6ymrZwSJkE-uB2IVmS8gw8ypWvWFqApLuVo&m=hJzyUurT5BUXQuoIfTZIbaGt2W5PYkwSRwnqqfJDr-E&s=kaY74mbqIsed7LZFijqr5WIsqiQN3tn01CsqA2aZsgQ&e=

-----Original Message-----
From: Eric Harrison <harrison@methwerb.com>
Sent: Friday, July 8, 2022 6:24 AM
To: Ruffner, Lisa <https://urldefense.proofpoint.com/v2/url?u=http-3A__Lisa.Ruffner-40doe.nj.gov&d=DwIFAg&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=_t79QI8F6ymrZwSJkE-uB2IVmS8gw8ypWvWFqApLuVo&m=hJzyUurT5BUXQuoIfTZIbaGt2W5PYkwSRwnqqfJDr-E&s=MC7v8h8xNpZTRROS_GBdGbwcFevDO6NxQ4Wd18xUK58&e=>; Anthony, Catherine <https://urldefense.proofpoint.com/v2/url?u=http-3A__Catherine.Anthony-40doe.nj.gov&d=DwIFAg&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=_t79QI8F6ymrZwSJkE-uB2IVmS8gw8ypWvWFqApLuVo&m=hJzyUurT5BUXQuoIfTZIbaGt2W5PYkwSRwnqqfJDr-E&s=uzQVPqfzheac5m51DSAJB3ptbeKXJGEsCqqTUbVI90Q&e=>
Subject: [EXTERNAL] USDC appeals

*** CAUTION ***This message came from an EXTERNAL address (harrison@methwerb.com). DO NOT click on links or attachments unless you know the sender and the content is safe. Suspicious? Forward the message to spamreport@cyber.nj.gov.

Ladies - Jamie Epstein has filed another appeal in US District Court. To whom should I write requesting that the administrative record be forwarded to the assigned US District Judge?

Eric L. Harrison
Methfessel & Werbel
2025 Lincoln Highway, Suite 200
P.O. Box 3012
Edison, N.J. 08818
W (732) 650-6511
C (732) 610-6881

THE INFORMATION CONTAINED IN THIS EMAIL COMMUNICATION IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT NAMED ABOVE. This message may be an Attorney-Client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please destroy this transmission and notify us immediately by telephone and/or reply email.
CONFIDENTIALITY NOTICE: The information contained in this communication from the New Jersey Department of Education is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this

> email, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the New Jersey Department of Education at (609) 376-3500 to arrange for the return of this information.