| | |
|---|---|
| F.V. AND M.V. O/B/O B.V.<br><br>       Petitioner,<br><br>V.<br><br>CHERRY HILL TOWNSHIP BOARD OF EDUCATION<br><br>       Respondent. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CIVIL ACTION NO.: 1:22-CV-04401-KMW-MJS<br><br><br>       Civil Action |

---

**DEFENDANT CHERRY HILL TOWNSHIP BOARD OF EDUCATION'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

**METHFESSEL & WERBEL, ESQS.**
2025 Lincoln Highway, Suite 200
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
1(732) 248-2355
harrison@methwerb.com
Attorneys for Cherry Hill Township
Board of Education
Our File No.  89897 ELH

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    THE COURT SHOULD AFFIRM BY SUMMARY JUDGMENT ALJ GERTSMAN'S PARTIAL SUMMARY DECISION PURSUANT TO THE ENTIRE CONTROVERSY DOCTRINE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.    THIS COURT SHOULD AFFIRM ALJ CROWLEY'S FINAL DECISION THAT THE DISTRICT PROVIDED A FREE APPROPRIATE PUBLIC EDUCATION IN THE LEAST RESTRICTIVE ENVIRONMENT DURING THE 2020-2021 SCHOOL YEAR . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

i

**TABLE OF AUTHORITIES**

Page(s)

Cases

Arena v. Borough of Jamesburg, Middlesex County,
309 N.J. Super. 106 (App. Div. 1998) ................................................. 7

Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,
458 U.S. 176 (1982) ................................................................... passim

Bd. of Educ. v. Illinois State Bd.,
41 F.3d 1162 (7th Cir. 1994) ............................................................ 5

Beth B. v. Van Clay,
282 F.3d 493 (7th Cir. 2002) ........................................................... 5

Buckhannon Board & Care Home, Inc. v. West Virginia Department of
Health and Human Resources,
532 U.S. 598 (2001) ................................................................... 25

Carlisle Area Sch. Dist. v. Scott P.,
62 F.3d 520 (3d Cir.1995) .......................................................12, 16

Crispin v. Volkswagenwern A.G.,
96 N.J. 336 (1984) ...................................................................... 8

Ditrolio v. Antiles,
142 N.J. 253 (1995).................................................................... 7

DiTrolio v. Antiles,
143 N.J. 253 (1995).................................................................... 9

Endrew F. v. Douglas Cty. Sch. Dist.,
580 U.S. _____, 137 S. Ct. 988 (2017) ..................................... passim

Ferren C. v. Sch. Dist. of Phila.,
595 F. Supp. 2d 566, 241 Ed.Law Rep. 771 (E.D. Pa. 2009).............. 18

Ferren C. v. Sch. Dist. of Philadelphia,
612 F.3d 712 (3d Cir. 2010) .......................................................... 17

Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.,
993 F.2d 1031 (3d Cir. 1993) ......................................................... 12

Hobart Bros. v. National Union Fire Ins.,
354 N.J. Super. 229 (App. Div.) .................................................. 8, 9

Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.,
39 F. Supp. 3d 584 (M.D. Pa. 2014)................................................. 18

Jones v. Flowers,
547 U.S. 220 (2006) ..................................................................... 7

K.D. by & through Dunn v. Downingtown Area Sch. Dist.,
904 F.3d 248 (3d Cir. 2018) ........................................................... 14

Karpovich v. Barbarula,
150 N.J. 473 (1997)..................................................................... 8

Knable v. Bexley City Sch. Dist.,
    238 F.3d 755 (6th Cir. 2001) ............................................................. 5
L.E. v. Ramsey Bd. of Educ.,
    435 F.3d 384 (3d Cir. 2006) ............................................................. 14
Lauren W. v. Deflaminis,
    480 F.3d 259 (3d Cir. 2007) ............................................................. 18
Loren F. v. Atlanta Indep. Sch. Sys.,
    349 F.3d 1309 (11th Cir. 2003) ......................................................... 5
M.M. v. Sch. Dist. of Greenville County,
    303 F.3d 523 (4th Cir.2002) ............................................................. 4
Millington v. Temple University School of Dentistry,
    261 F.App'x 363 (3rd Cir. 2008) ...................................................... 20
Murray v. Montrose County Sch. Dist.,
    51 F.3d 921 (10th Cir. 1995) ............................................................ 5
Mystic Isle Dev. Corp. v. Perskie & Nehmad,
    142 N.J. 310 (1995)...................................................................... 8, 9
Oliver v. Ambrose,
    152 N.J. 383 (1998)......................................................................... 7
P.N. v. Greco,
    282 F.Supp.2d 221 (D.N.J. 2003) ..................................................... 5
Polk v. Central Susquehanna Intermediate Unit 16,
    853 F.2d 171 (3d Cir. 1988) ............................................................ 14
Reid v. District of Columbia,
    401 F.3d 516, 196 Ed.Law Rep. 402 (D.C. Cir. 2005)...................... 19
Ridgewood Bd. of Educ. v. N.E. ex rel. ME.,
    172 F.3d 238 (3d Cir. 1999) ................................................. 14, 18, 23
Ridley School District v. M.R.,
    680 F.3d 280 (3rd Circ. 2012) ........................................................ 20
S.H. v. State-Operated School Dist. of City of Newark,
    336 F.3d 260 (3rd Cir. 2003) ................................................... 4, 5, 16
Woodward-Clyde Consultants v. Chemical and Pollution Sciences,
    105 N.J. 464 (1988).......................................................................... 8

Statutes

20 U.S.C. §1401 ................................................................................ 11
20 U.S.C. §1412(a)(5)(A) ................................................................. 16
20 U.S.C. §1414(d)(1)(A)(i)(I)-(III) ................................................. 13
20 U.S.C. § 1415(b)(6) & (f) .............................................................. 6
20 U.S.C. § 1415(f)(3)(B) .................................................................. 7
20 U.S.C. § 1415(i)(2)(A) .................................................................. 4
20 U.S.C. § 1415(i)(2)(C)(iii).......................................................... 17
20 U.S.C.A. §1412(a)(1) .................................................................. 11
§§1414(d)(1)(A)(i)(IV)................................................................13, 16

iii

Regulations

34 C.F.R. § 300.511 ..................................................................... 6

34 C.F.R. § 300.513 ............................................................ 17

N.J.A.C. 6A:14-2.7 ................................................................. 6

**PRELIMINARY STATEMENT**

On July 3, 2022 Plaintiffs F.V. & M.V., the parents of seven-year-old B.V., filed a two count Complaint against the Cherry Hill Township Board of Education ("District") and its Superintendent of Schools, Dr. Joseph Meloche. Count One included an attempted appeal under the Individuals with Disabilities in Education Act from the outcome of a due process hearing that had been initiated in May 2020 - repeating claims asserted in the previously-filed matter assigned Civil Action No. 21-18096 (since dismissed by Summary Judgment on March 28, 2023 – ECF Document 34) – and added new attempted appeals from two orders of Administrative Law Judges dismissing claims within a second due process petition filed in January 2021. Count Two of the Complaint attempted to assert discrimination and retaliation claims under the New Jersey Law Against Discrimination ("NJLAD").

On March 31, 2023 this Court dismissed those portions of Count One which repeated claims asserted in the previously-filed appeal under Civil Action Number 21-18096, and dismissed without prejudice Count Two for failure to state a claim, affording Plaintiffs until April 14, 2023 to file a motion for leave to file an Amended Complaint providing a factual basis for the NJLAD claim.  (ECF Document 25)

Plaintiffs did not file such a motion and did not request an extension of time within which to do so.  The District therefore moves for summary judgment on the IDEA appeals that remain within Count One –

1

specifically, the challenges to ALJ Gertsman's order of partial summary decision of claims arising out of the 2018-2019 and 2019-2020 school years based on the entire controversy doctrine (**Exhibit B**), and ALJ Crowley's Final Decision determining that the District provided B.V. with a free, appropriate public education in the least restrictive environment appropriate to her needs during the 2020-2021 school year. (**Exhibit C**)

In January 2021, during B.V.'s kindergarten year and the pendency of the due process hearing at issue in Civil Action No. 21-18096, the Plaintiffs filed a second petition for due process seeking relief based on allegations that the District deprived B.V. of a free, appropriate public education in the least restrictive environment during the 2018-2019, 2019-2020 and 2020-2021 school years, and that the District wrongfully denied an independent evaluation to B.V. On May 13, 2021, ALJ Gertsman granted partial summary dismissal of all claims relating to the 2018-2019 and 2019-2020 school years pursuant to the entire controversy doctrine because such claims could have been raised within the previously filed due process petition.

Thereafter, following a full hearing on all remaining claims, on April 6, 2022 the Honorable Sarah G. Crowley, ALJ ("ALJ Crowley") issued a Final Decision concluding that B.V. received a free and appropriate education in the least restrictive environment appropriate to her needs during the 2020-2021 school year, and that the Plaintiffs were not entitled to an order compelling an independent educational

evaluation because the District had agreed to fund an independent evaluation before the petition was filed.

Plaintiffs filed this action on July 3, 2022. At paragraphs 56-60 and 66-67 they repeated verbatim claims asserted at Count One of Civil Action No. 21-18096, seeking relief in connection with an emergent relief order and an appeal from a June 2021 Final Decision. These claims have been dismissed in this action and adjudicated in favor of the District in the summary judgment terminating Civil Action No. 21-18096.

At paragraphs 63 and 64 of the Complaint in this action, Plaintiffs sought to appeal from the May 13, 2021 Order of Partial Summary Decision of ALJ Gertsman and the April 6, 2022 Final Decision of ALJ Crowley.

Judge Gertsman's Partial Summary Decision of May 13, 2021 – dismissing attempted claims relating to the 2018-2019 and 2019-2020 school years as barred by the entire controversy doctrine – was legally correct.  Judge Crowley's April 6, 2022 Final Decision determining that B.V. received a free, appropriate public education in the least restrictive environment during the 2020-2021 school year was supported by ample competent, credible evidence which neither the Plaintiffs nor their expert rebutted or even challenged.   Accordingly, the District moves for summary judgment on all remaining claims.

**LEGAL ARGUMENT**

**POINT ONE**

**THE COURT SHOULD AFFIRM BY SUMMARY JUDGMENT ALJ GERTSMAN'S PARTIAL SUMMARY DECISION PURSUANT TO THE ENTIRE CONTROVERSY DOCTRINE**

A party aggrieved by an IDEA decision by a state educational agency has a right to bring a civil action in state or federal court. A reviewing court shall (i) receive the records of the below proceeding; (ii) hear additional evidence at the request of a party; and (iii) base its decision on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(A); S.H. v. State-Operated School Dist. of City of Newark, 336 F.3d 260 (3rd Cir. 2003).

In S.H. the Third Circuit defined the "modified de novo" standard to be employed by a District Court sitting in review of the findings and conclusions of an Administrative Law Judge in a special education dispute:

> Under the IDEA, the reviewing court "is obliged to conduct a modified *de novo* review, giving 'due weight' to the underlying administrative proceedings." M.M. v. Sch. Dist. of Greenville County, 303 F.3d 523, 530-31 (4th Cir.2002) (citations omitted). Factual findings from the administrative proceedings are to be considered prima facie correct. Id. at 531. "[I]f a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities." Id. (citations omitted).

S.H., 336 F.3d at 269-270.

4

A district court does not use the substantial evidence standard typically applied in the review of administrative agency decisions, but instead must decide independently whether IDEA requirements have been met. Id. (quoting Murray v. Montrose County Sch. Dist., 51 F.3d 921, 927 (10th Cir. 1995)) and Bd. of Educ. v. Illinois State Bd., 41 F.3d 1162, 1167 (7th Cir. 1994)).  A District Court gives "due weight" or a "modified de novo" review to an administrative law judge's factual findings. See S.H., supra, 336 F.3d at 270.

Under this standard of review, a District Court makes findings of fact based on a preponderance of the evidence contained in the record, while giving some deference to the fact findings of the administrative proceedings. Id. (quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001)). For questions of law, a District Court applies a de novo standard of review. See P.N. v. Greco, 282 F.Supp.2d 221, 235 (D.N.J. 2003) (citing L.M. ex rel. H.M. v. Evesham Twp. Bd. of Educ., 256 F.Supp.2d290, 295 (D.N.J. 2003)).

"Summary judgment [in IDEA cases] has been deemed appropriate even when facts are in dispute, and is based on a preponderance of the evidence." Loren F. v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313 (11th Cir. 2003) (citing Beth B. v. Van Clay, 282 F.3d 493, 496 n.2 (7th Cir. 2002)).  Accordingly, a district court's decision "is perhaps better described as judgment on the record." Ibid.

In this case the parties have determined not to offer additional evidence and have agreed to rely solely on the administrative record.  As such, this matter is ripe for summary determination.

ALJ's Gertsman's Order of Partial Summary Decision dismissing all claims arising out of the 2018-2019 and 2019-2020 school years was correctly decided because the claims for compensatory education arising out of alleged IDEA violations prior to the 2020-2021 school year could have been included within the prior petition challenging the proposed placement for the 2020-2021 school year.

The IDEA and its implementing regulations afford parents and school districts the right to request a due process hearing with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a FAPE to the child. 20 U.S.C. § 1415(b)(6) & (f); 34 C.F.R. § 300.511; N.J.A.C. 6A:14-2.7. A request for a due process hearing shall be filed within two years of the date the party knew, or should have known, about the alleged action that forms the basis for the due process petition. N.J.A.C. 6A:14-2.7(a)(1).

The filing party is required to provide sufficient notice to the respondent party and must state the specific issues in dispute, relevant facts, and the relief sought within the written request for due process. N.J.A.C. 6A:1402.7(c). Moreover - and particularly relevant to the dispute at hand - the party requesting the due process hearing may not raise issues at the due process hearing that were not raised in the hearing

request unless the other party agrees otherwise. 20 U.S.C. § 1415(f)(3)(B). This statutorily and administratively codified rule flows logically from the constitutional definition of due process: notice and an opportunity to be heard. Jones v. Flowers, 547 U.S. 220, 235 (2006).

Under the Entire Controversy Doctrine, codified in Rule 4:30A, all causes, claims, and defenses arising from a specific incident must be asserted in the initial action or are barred from later adjudication. Oliver v. Ambrose, 152 N.J. 383 (1998). R. 4:30A provides:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R.4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

"The entire controversy doctrine does not require commonality of legal issues. Rather, the determinative consideration is whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." Ditrolio v. Antiles, 142 N.J. 253, 271 (1995).

It is well established that "the entire controversy doctrine bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled." Arena v. Borough of Jamesburg, Middlesex County, 309 N.J. Super. 106, 111 (App. Div. 1998). If a "party withholds a constituent claim. . . . and the case is tried to judgment or settled, that party 'risks losing the right to bring that claim later.'" Kaselaan & D'Angelo Assocs. v. Soffian, 290 N.J.

Super.293, 299 (App. Div. 1996) (citing <u>Mystic Isle Dev. Corp. v. Perskie & Nehmad</u>, 142 N.J. 310, 324 (1995)).

Underlying the entire controversy doctrine are "the twin goals of judicial administration and fairness to the litigants." <u>Woodward-Clyde Consultants v. Chemical and Pollution Sciences</u>, 105 N.J. 464, 466 (1988). Indeed, "the doctrine recognizes that it is neither fair nor efficient to fragment a single controversy into separate actions. Such fragmentation can harass litigants, delay final adjudication, and waste judicial resources." <u>Ibid.</u> citing <u>Crispin v. Volkswagenwern A.G.</u>, 96 N.J. 336, 350-52 (1984). Nonetheless, New Jersey Courts have held that where only a "negligible burden" is placed on the judicial system, the entire controversy doctrine does not apply. <u>See</u> <u>Karpovich v. Barbarula</u>, 150 N.J. 473 (1997) (holding that where the first litigation lasted seven days and consisted only of the filing of a complaint and the entry of a consent judgment, the entire controversy could not preclude a later action).

Preclusion of a successive action against a person not a party to the first action has been abrogated except in special situations involving both inexcusable conduct, and substantial prejudiced to the non-party resulting from omission from the first suit. See, e.g., Pressler, <u>Current N.J. Court Rules</u>, comment 1 on <u>R.</u> 4:30A (2002); <u>Hobart Bros. v. National Union Fire Ins.</u>, 354 N.J. Super. 229, 242 (App. Div.), certif. denied, 175 N.J. 170 (2002). "New Jersey having abandoned mandatory

8

party joinder, the party invoking the entire controversy doctrine has the burden of establishing both inexcusable conduct and substantial prejudice." Hobart Bros., supra, 354 N.J. Super. at 242.

Overall, the Entire Controversy Doctrine is based upon the following policies:

(1) To encourage the comprehensive and conclusive determination of legal controversies;

(2) To achieve fairness amongst parties and/or prospective parties; and

(3) To promote judicial economy and efficiency by avoiding fragmented, multiple, and duplicative litigation.

DiTrolio v. Antiles, 143 N.J. 253,267 (1995); Mystic Isle Dev.Corp. v. Perskie & Nehmad, 142N.J.310, 323 (1995).

ALJ Gertsman's Order of Partial Summary Decision dismissing all claims arising out of the 2018-2019 and 2019-2020 school years was correct. On May 8, 2020, petitioners filed a petition for due process ("BV1") seeking placement in an inclusion class with a 1:1 aide. On October 20, 2020, ALJ Gertsman granted the Petitioners' motion to amend the BV1 petition to include a claim for compensatory education for the missed speech sessions and nothing more.

In the context of the second due process hearing ("BV2"), the District moved for dismissal of the compensatory education claims arising out of alleged violations prior to the 2020-2021 school year because they were barred by the entire controversy doctrine. On May 13, 2021, ALJ Gertsman made a final decision and concluded:

9

The BV1 petition, which did not initially seek compensatory education, was amended to include compensatory education for the missed speech sessions required by the 2019-2020 IEP. Any claims by petitioner for additional compensatory education related to the 2018-2019 and 2019-2020 school years would arise out of the same common nucleus of operative facts as the BV1 petition. Consequently, petitioner's attempt here to include those claims constitutes a second action which is precluded by the entire controversy doctrine. (**Exhibit D**, at p. 4)

As this decision was legally correct, it should be upheld summarily.

**POINT TWO**

**THIS COURT SHOULD AFFIRM ALJ CROWLEY'S
FINAL DECISION THAT THE DISTRICT PROVIDED
A FREE APPROPRIATE PUBLIC EDUCATION IN THE
LEAST RESTRICTIVE ENVIRONMENT DURING THE
2020-2021 SCHOOL YEAR**

■ **The Procedural and Substantive Requirements of the IDEA:
FAPE in the LRE**

The IDEA offers states federal funds to assist in educating children with disabilities. In exchange for the funds, the state pledges to provide all disabled students with a free appropriate public education ("FAPE"), which consists of special education and related services. 20 U.S.C.A. §1412(a)(1). Special education is instruction designed to meet the unique needs of a child with a disability, while related services are the support services required to assist a child to benefit from the instruction. 20 U.S.C. §1401.

While Congress did not define "appropriate public education," the U.S. Supreme Court has interpreted it to mean an education that is "reasonably calculated to provide a meaningful educational benefit to the individual child." Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 192 (1982). This requirement is satisfied if the child's IEP sets out an educational program that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." See Joseph F. o/b/o minor Endrew F. v. Douglas Cty. Sch. Dist., 580 U.S. _____, 137 S. Ct. 988, 999 (2017).

11

The 'reasonably calculated' qualification reflects a recognition that crafting an appropriate program of education requires a prospective judgment by school officials. <u>Rowley</u>, at 207; <u>Endrew F.</u> at 999.  The Act contemplates that this fact-intensive exercise will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians. <u>Rowley</u>, 458 U.S. at 208-209; <u>Endrew F.</u> 137 S. Ct. at 999.  <u>See</u> <u>Fuhrmann o/b/o Fuhrmann v. E. Hanover Bd. of Educ.</u>, 993 F.2d 1031, 1040 (3d Cir. 1993) ("[T]he measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date.")  Most importantly, because an IEP "is judged prospectively[,] . . . any lack of progress under a particular IEP, assuming arguendo that there was no progress, does not render that IEP inappropriate." <u>Carlisle Area Sch. Dist. v. Scott P.</u>, 62 F.3d 520, 530 (3d Cir.1995).  "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created."  <u>Endrew F.</u> 137 S. Ct. at 1001.  However, the absence of a bright-line rule "should not be mistaken for an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." <u>Endrew F.</u> 137 S. Ct. at 1001.  To that end, any review of an IEP must focus on whether the IEP is <u>reasonable</u>, not whether the Court regards it as ideal. <u>Rowley</u>, 458 U.S. at 206-207; <u>Endrew F.</u> 137 S. Ct. at 999.

The student's IEP, a comprehensive plan drafted through the collaboration of teachers, school officials, and parents, lays out the special education and related services that are tailored to the unique needs of that specific student. Endrew F., 137 S. Ct. at 994. It must comply with a detailed set of procedures set forth in the IDEA. For example, it must contain a "statement of the child's present levels of academic achievement and functional performance," and a description of "how the child's disability affects the child's involvement and progress in the general education curriculum," along with "measurable annual goals, including academic and functional goals," and a "description of how the child's progress toward meeting those goals" will be measured. 20 U.S.C. §1414(d)(1)(A)(i)(I)-(III). The special education and related services laid out in the IEP must be designed for the child to "advance appropriately toward attaining the annual goals" and, to the extent possible, "be involved in and make progress in the general education curriculum." Id. at §§1414(d)(1)(A)(i)(IV).

The Act does not require school districts to maximize a student's potential, or provide educational opportunities substantially equal to the opportunities afforded children without disabilities, but does require a "basic floor" of opportunity which consists of "access to specialized instruction and related services" individually designed for each child. Rowley, 458 U.S. at 197-201 (rejecting the lower court's holding that the Act requires States to maximize a student's potential); Endrew F. 137 S.

Ct. at 1001 (rejecting parents' position that a FAPE is an "education that aims to provide a child with a disability, opportunities to achieve academic success, attain self-sufficiency, and contribute to society that are substantially equal to the opportunities afforded children without disabilities.")

The Third Circuit has interpreted this "basic floor" to be an education which offers the student an opportunity for meaningful learning, taking into account the child's potential. Ridgewood Bd. of Educ. v. N.E. ex rel. ME., 172 F.3d 238, 247 (3d Cir. 1999); Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 185 (3d Cir. 1988) (providing that a satisfactory IEP requires "conferring of a "meaningful benefit," and must be gauged in relation to the child's potential); L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 390 (3d Cir. 2006). In other words, "the educational program 'must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential and individual abilities.'" K.D. by & through Dunn v. Downingtown Area Sch. Dist., 904 F.3d 248, 254 (3d Cir. 2018). It must likely produce progress, rather than regression or trivial educational benefit. Id.

The Third Circuit's interpretation of the Supreme Court's decision in Rowley was recently validated by the U.S. Supreme Court in the matter of Joseph F. o/b/o minor Endrew F. v. Douglas County School District, which acknowledged that "the benefits obtainable by children at

one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between." <u>Rowley</u>, 458 U.S. at 202. For that reason, the Supreme Court in <u>Douglas</u> refrained from elaborating what 'appropriate progress' will look like from case to case, except to say that it must be more than de minimis. <u>Endrew F.</u> 137 S. Ct. at 1001.  Instead, it recognized the expertise and exercise of judgment held by school authorities in determining what "appropriate" progress resembles.  <u>Ibid.</u>

The <u>Endrew F.</u> Court reaffirmed <u>Rowley</u>'s holding that for children fully integrated in the regular classroom, progress would typically require an IEP that is "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." <u>Rowley</u>, 458 U.S. at 204; <u>Endrew F.</u>, 137 S. Ct. at 1000. The Court explained that in a regular classroom, regular examinations are administered, grades are awarded, and yearly advancement to higher grade levels is permitted for those children who attain an adequate knowledge of the course materials. <u>Rowley</u>, 458 U.S. at 203. "Progress through this system is what our society generally means by an 'education.'" <u>Endrew F.</u> 137 S. Ct. at 999.  This sentiment reflects the broad purpose of the IDEA, which was enacted "in response to Congress' perception that a majority of handicapped children in the United States were either totally excluded from schools or were sitting idly in regular classrooms awaiting the time when they were old enough to drop out." <u>Rowley</u>, 458 U.S. at 179.

15

However, the Court cautioned that where progression through a general education curriculum and mastery of grade level skills "is not a reasonable prospect for a child, [that child's] IEP need not aim for grade level advancement." 137 S. Ct. at 1000.

The IDEA also includes a mainstreaming component in its description of a FAPE, which consists of an education in the least restrictive environment.  <u>S.H. v. State-Operated Sch. Dist. of City of Newark</u>, 336 F.3d 260, 265 (3d Cir. 2003). "The least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." <u>Carlise Area Sch. v. Scott P.</u>, 62 F.3d 520, 535 (3d Cir. 1995); 20 U.S.C. §1412(a)(5)(A).  As such, the IDEA provides that when possible, the IEP must be designed so that the child may "be involved in and make progress in the general education curriculum."   20 <u>U.S.C.</u> §1414(d)(1)(A)(i)(IV).

When faced with claims regarding violations of the IDEA, courts must consider whether the district "complied with the procedures set forth in the Act" and whether the IEP "developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." <u>Rowley</u>, 458 U.S. 206-07.

In matters alleging a substantive violation, the hearing officer's determination of whether a child received FAPE must be based on

16

substantive grounds. In matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE only if the procedural inadequacies: (1) impeded the child's right to a FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (3) caused a deprivation of educational benefit. 34 C.F.R. § 300.513.

- **Compensatory Education as a Remedy for FAPE Denial**

The IDEA expressly authorizes courts to grant a prevailing parent "such relief as the court determines is appropriate" to remedy the deprivation of a FAPE.  20 U.S.C. § 1415(i)(2)(C)(iii).  Any equitable relief ordered should further the purposes of the IDEA by being tailored to the particular circumstances and deprivations a case may present.  Ferren C. v. Sch. Dist. of Philadelphia, 612 F.3d 712, 717 (3d Cir. 2010).

Compensatory education is an equitable form of reimbursement when a school district does not provide a free and appropriate public education ("FAPE"). Compensatory education can take the form of reimbursement for out-of-pocket educational expenses, additional prospective services or supports, or a different educational setting than what the student would have received if the district had not failed to provide a FAPE. The concept behind compensatory education is to place the student in a position where he or she would have been if there had been no violations under the Individuals with Disabilities Education

17

Improvement Act ("IDEA"). <u>Jana K. ex rel. Tim K. v. Annville-Cleona Sch.</u> <u>Dist.</u>, 39 F. Supp. 3d 584, 608 (M.D. Pa. 2014).

A disabled student's right to compensatory education accrues when the school knows or should know that the student is receiving an inappropriate education.'" <u>Lauren W. v. Deflaminis</u>, 480 F.3d 259, 272 (3d Cir. 2007). The right to compensatory education arises not from the denial of an appropriate IEP, but from the denial of an appropriate education. <u>Ridgewood</u>, 172 F.3d at 250.

The March 3, 2021 NJDOE Broadcast (**Exhibit R-9**) authorized the provision of compensatory education to students who were denied a FAPE due to services missed during the COVID-19 pandemic.    It correctly noted that "neither the IDEA nor the State's special education regulations require a 1:1 ratio when calculating the amount of compensatory education to be awarded to a student with a disability. It is the role of the IEP team to determine the need, type, amount, frequency, duration, and location of compensatory education necessary to address lack of progress toward IEP goals and objectives resulting from missed services." <u>Ibid</u>.

The focus on FAPE deprivation and what services may be necessary to remediate the deprivation – rather than a rote calculation of missed sessions or minutes - is consistent with the "qualitative" approach taken by the Third Circuit.  See, e.g., <u>Ferren C. v. Sch. Dist. of</u> <u>Phila.</u>, 595 F. Supp. 2d 566, 241 Ed.Law Rep. 771 (E.D. Pa. 2009).

18

In <u>Reid v. District of Columbia</u>, 401 F.3d 516, 523, 196 Ed.Law Rep. 402 (D.C. Cir. 2005), the Court made clear that compensatory education is not to be awarded based on an hour for hour calculation. Rather, "in every case . . . the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." 401 F.3d at 524. Instead of looking at services lost, the qualitative approach looks to the educational benefit lost. A "cookie-cutter approach" – which based on the language in the petition we expect the petitioners to urge in this case - "runs counter to both the broad discretion afforded by IDEA's remedial provision and the substantive FAPE standards that provision is meant to enforce." <u>Id</u>. at 523.  In order to support an award of compensatory education, there must be evidence regarding the child's specific education deficits and the specific compensatory measures required to correct them. <u>Id</u>. at 526.

■ **Evidence Presented in the Due Process Hearing**

While it is difficult to follow, the "Petition (Corrected)" filed by the Petitioners' attorney on January 18, 2021 included demands for relief pursuant to the Individuals with Disabilities in Education Act, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  As this was an action filed pursuant to the procedural mechanisms of the IDEA, we are not aware of a jurisdictional basis for the OAL to

19

adjudicate claims under the ADA or Section 504. However, because courts have held that the duty to accommodate a disabled student's disabilities under the ADA and Section 504 is essentially identical to the IDEA-imposed duty to provide a free, appropriate public education in the least restrictive environment – see, e.g., <u>Ridley School District v. M.R.</u>, 680 F.3d 280, 281 (3rd Circ. 2012); <u>Millington v. Temple University School of Dentistry</u>, 261 F.App'x 363, 365 (3rd Cir. 2008) – we will analyze petitioners' requests for relief under applicable IDEA law.

The due process petition concludes with a request for several "declarations":

A.    Declare: Respondent: [1] impeded B.V.'s right to a free appropriate public education and/or; [2] significantly impeded B.V.'s opportunity to participate in the decision making process regarding the provision of a free appropriate public education; and/or [3] caused a deprivation of educational benefit resulting in a denial of FAPE and in violation of B.V.'s rights under IDEA, 504 and ADA; and/or;

B.    Declare: Respondent failed to provide B.V. with a free and appropriate education in the least restrictive environment so that B.V. could make progress based on B.V.'s unique circumstances.

C.    Declare: As a result of Respondent's remote learning placement and program for B.V., Respondent failed to provide B.V. with a free and appropriate education in the least restrictive environment so that B.V. could make progress based on B.V.'s unique circumstances.

("Petition (Corrected)," pp. 11-12)

Following these requests for "declarations," the petition requests the following additional relief:

20

D.      Order: Respondent to provide B.V. all appropriate prospective and compensatory relief, including the Independent Educational Evaluation referred to in the Petition.

E.      Order: Respondent to provide B.V. all appropriate accommodations for B.V.'s disabilities.

F.      Order: Declare all administrative claims exhausted and all civil claims against Respondent and its Board Members, Administrators, Employees and Agents, in their individual capacities reserved.

Viewed indulgently, the requests for "declarations" and "orders" at the end of the petition seek a determination that the District deprived B.V. of FAPE in the LRE, denied B.V.'s parents meaningful participation in B.V.'s educational decision-making process and wrongfully denied B.V. an independent educational evaluation.  We will address these allegations in turn.

- ■ **The Cherry Hill School District Provided B.V. With FAPE in the LRE During the 2020-2021 School Year**

The 2020-2021 school year was challenging for disabled and non-disable students alike.  However, the challenges of COVID-19 did not excuse local educational agencies from their responsibility under the IDEA to provide a free, appropriate public education in the least restrictive environment appropriate to the needs of their students.  As correctly noted by the NJDOE in its March 2021 Broadcast regarding compensatory services (Exhibit R-9), a student who is deprived of FAPE on account of COVID-related shutdowns would be entitled to compensatory services necessary to remedy the deprivation.

21

B.V., to the credit of her teachers, her parents and most importantly her own hard work, is not such a student. The two special education experts who crafted and implemented her educational program – case manager Dr. Leanne Bernosky and certified special education teacher, general education teacher and reading specialist Renee Johnson – testified credibly, citing competent documentary evidence, that B.V. made meaningful educational progress in the general education kindergarten classroom. While B.V.'s parents elected to have her receive remote instruction at home even when in-person instruction was also available, she nevertheless demonstrated substantial progress in all areas of instruction. Her report cards and progress reports document this progress. Neither cross-examination by the petitioners' attorney nor any evidence presented by the petitioners called into question the unchallenged expert testimony that B.V. received a FAPE in the LRE.

Dr. Mary Pipan, the petitioners' expert, expressed an opinion with which the District had agreed: As of the Spring of 2020 when she last saw B.V., the District should educate B.V. in the less restrictive environment of a general education kindergarten classroom with the help of a 1:1 aide. This is precisely what the District did for the 2020-2021 school year. While B.V.'s parents deprived her educators of the opportunity to track her progress using updated goals and objectives because they inexplicably rejected the IEP drafted to memorialize the precise program she was receiving, the team nevertheless was able to

measure B.V.'s meaningful educational progress by using the general educational kindergarten academic standards.

F.V.'s testimony similarly failed to undermine the evidence that his daughter made meaningful educational progress in her 2020-2021 program – which was the precise program that he and M.V. had demanded.  His testimony regarding the manner in which the 1:1 aide assisted B.V.'s instruction, the fact that he did not receive training from Cherry Hill staff, the number of hours of instruction B.V. received daily, and the absence of in-home related services was and remains irrelevant to the sole question posed by the demands in the petition for compensatory and prospective services: did B.V. receive FAPE in the LRE?  As the District met its burden of answering this question in the affirmative and substantiating its answer with competent, unchallenged fact and expert testimony, the petitioners were entitled to neither a declaration nor an award of compensatory education.

- ■ **The District Afforded the Petitioners Meaningful Participation in the Educational Decision-Making Process**

Prior to the start of the 2020-2021 school year, B.V.'s parents objected to the placement of B.V. in a self-contained kindergarten classroom and demanded that she be placed in a general education classroom with the assistance of a 1:1 aide.  Notwithstanding the parents' refusal to withdraw their prior petition upon learning that the District had agreed to meet this demand, the District still placed B.V. in

the general education kindergarten classroom with a 1:1 aide as the petitioners had requested.

Prior to the IEP meeting that was rescheduled to accommodate the schedule of the parents' attorney, Dr. Bernosky provided B.V.'s parents with a copy of a draft IEP and invited them to submit any questions or concerns in advance of the meeting. They did not do so. When during the meeting the parents were invited to participate, their attorney interjected that they would not be speaking. Following issuance of the IEP after the meeting the parents still had nothing to say about it. Even during the hearing of this case B.V. had no criticism of the IEP. Regardless, the unrebutted evidence demonstrates that the petitioners were afforded a full and fair opportunity to participate in educational decision-making. While one might reasonably interpret their failure to seize this opportunity as evidence of satisfaction with the services proposed and provided, regardless of their motivation in declining to communicate with the Child Study Team, the evidence demonstrates that the other members of the IEP team all but begged them to participate in educational planning for their daughter. As such, there was no denial of parental involvement.

24

■ **The Cherry Hill School District Committed to Funding the Precise Independent Educational Evaluation That the Parents Requested More Than A Month Before They Filed the Petition for Due Process; Thus They Are Not Entitled to An Order Directing the District to do What It Committed to Doing Before the Petition Was Filed**

**Exhibits R-5 and R-7** and the testimony of Ms. Ragsdale demonstrate that the District agreed on December 11, 2020 to fund the precise independent educational evaluations that the parents had asked the District to fund approximately two months earlier. While the petitioners failed to explain why they failed to follow through, it is undisputed that this "relief" was granted voluntarily by the District before the petition was filed.

Why, then, did the petitioners file a petition seeking an order compelling the District to do what it had already committed to doing? Neither they nor their attorney satisfactorily answered this question during the hearing; perhaps their attorney will attempt to answer it in his response to this motion for summary judgment. Based on prior conduct, it is difficult not to surmise that petitioners sought an order compelling the District to provide a benefit so that they could claim to be "prevailing parties" entitled to an award of attorney fees.[1]

---

[1] Of course, even if the OAL had been fooled into ordering the District to provide a benefit it had committed to providing before the petition was filed, such an order would not change the legal relationship between the parties and therefore the petitioners would not be "prevailing parties" as defined by law.  See generally Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001).

Regardless of the reasoning behind the inaction of the Plaintiffs and their attorney, Judge Crowley was correct in denying as moot the Plaintiffs' request for an order compelling Independent Educational Evaluations.

- **Judge Crowley's Final Decision**

ALJ Crowley's April 6, 2022 Final Decision found that "B.V. was making meaningful progress and was provided FAPE during the 2020-2021 school year in the LRE." The Final Decision stated:

> I therefore CONCLUDE that the District has met its burden of demonstrating by a preponderance of the evidence that B.V. was properly placed in a general education classroom with a one-on-one aide and was making meaningful progress during the period in question. I further, CONCLUDE that B.V. was provided FAPE in the LRE. The petitioner presented no credible evidence to dispute that B.V. was being provided FAPE in the LRE. I further CONCLUDE that any issues relating to requested independent evaluations were resolved by the District agreeing to provide same and the parents failed to follow through on the offer to provide such evaluations. The issue of independent evaluations was also the subject matter of a prior Order entered by Judge Rabin.

> The ALJ's conclusion was based on the following facts:

> 1. B.V. was placed in a general education class beginning on September 10, 2020, and provided with a one-on-one aide.

> 2. This placement was predicated on the resolution of a prior due process proceeding and was agreed to by all the parties.

> 3. A one-on-one aide was present and provided assistance to B.V. during remote learning in the general education placement.

> 4. The teacher also provided one-on-one assistance to B.V.

> 5. B.V. was present in class and needed no assistance in accessing remote learning.

6. B.V. was making meaning progress consistent with her IEP.

7. B.V. was receiving FAPE in the LRE.

With respect to services provided remotely on account of COVID-related building closures, ALJ Crowley noted that "the directive from the State as well as the USDOE clearly states that the services to be provided to special education students in remote learning was to be 'to the greatest extent possible.'" Additionally, "there was no obligation to amend every IEP based on the student's desire to return to school or continue with remote learning."

The District presented competent, unrebutted evidence from expert witnesses that B.V. received FAPE in the LRE.  Plaintiffs presented no evidence to undermine this conclusion.  Nor does the administrative record contain any evidence that the absence of non-special education students in B.V.'s remote learning environment caused an educational deprivation that violated B.V.'s IDEA rights.

The undisputed competent evidence presented by the Cherry Hill School District – including unrebutted factual testimony, expert testimony and documentary evidence - demonstrated that the District provided a free, appropriate public education in the least restrictive environment appropriate to B.V.'s needs and that she made meaningful educational progress during the 2020-2021 school year.  This occurred notwithstanding a clear lack of cooperation by the petitioners and outright obstruction from their attorney.

27

The evidence similarly demonstrated that B.V.'s parents were afforded a full and fair opportunity to participate in educational decision-making regarding B.V.'s program.  That they chose not to exercise that right does not negate its protection by the District.

Finally, the petitioners' request for an order compelling the District to fund independent educational evaluations that it agreed to fund before the petition was filed was properly dismissed because there was no live controversy. All the parents needed to do was arrange the independent evaluations they requested more than a year ago and the District will pay for them, as the District committed to doing in writing a full month before the petition was filed.

28

## CONCLUSION

As the District proved that it provided B.V. with FAPE in the LRE during the 2020-2021 school year and all other previously justiciable issues remaining in the petition were properly dismissed by partial summary decision or were moot on account of voluntary action taken by the District, the District requests that this Court enter summary judgment affirming the challenged decisions of the Office of Administrative Law and dismissing the Complaint with prejudice.

Respectfully submitted,

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Cherry Hill Township
Board of Education

By:_____
       Eric L. Harrison

DATED: April 19, 2023

29