UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| F.V. and M.V., individually and on behalf of B.V., <br><br> Plaintiffs, <br><br> v. <br><br> CHERRY HILL TOWNSHIP BOARD OF EDUCATION MEMBERS, et al., <br><br> Defendants. | Civil Action <br><br> No. 1:22-CV-4401-KMW-SAK <br><br><br> **OPINION** |

Jamie M. Epstein, Esquire
17 Fleetwood Drive
Hamilton, NJ 08690

  *Counsel for Plaintiffs F.V. and M.V., individually and on behalf of B.V.*

Eric L. Harrison, Esquire
Methfessel & Werbel
2025 Lincoln Highway, Suite 200
Edison, N.J. 08818-3012

  *Counsel for Defendants Cherry Hill Township Board of Education Members and Superintendent Joseph Meloche*

**WILLIAMS, District Judge:**

**I. INTRODUCTION**

  Plaintiffs F.V. and M.V., on behalf of their minor daughter, B.V. (together, "Plaintiffs"), bring this action against Defendants Cherry Hill Township Board of Education Members (the "Board") and Superintendent Joseph Meloche ("Meloche") (together, "Defendants") under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400, *et seq.* More

1

specifically, Plaintiffs appeal (1) the May 13, 2021 Order of New Jersey Administrative Law Judge Jacob S. Gertsman ("ALJ Gertsman"), which granted Defendants' Motion for Partial Summary Decision; and (2) the April 6, 2022 Final Decision of ALJ Sarah G. Crowley ("ALJ Crowley"), which denied Plaintiffs' remaining claims and other demands for relief.[1]

Presently, Plaintiffs appeal the November 4, 2022 Opinion and Order of U.S. Magistrate Judge Sharon A. King, striking various materials Plaintiffs submitted and represented to be the administrative record from the agency below. For the reasons that follow, the Magistrate Judge's Opinion and Order are affirmed and remanded for further proceedings.

II.   BACKGROUND

   A.   **The Parties' Logistical Dispute**

On July 8, 2022, Plaintiffs filed a letter advising that they were required to provide the Court with "the records of the administrative proceedings" under the IDEA. (ECF No. 5) (quoting 20 U.S.C. § 1415(i)(2)(C)(i) (internal quotation marks omitted)). Plaintiffs further advised that attached to the letter was the combined index of the 12-volume administrative record "being filed under seal." (*Id.*) But rather than file the actual administrative record, Plaintiffs filed portions of the very same index already on the docket. (ECF Nos. 6-1–6-12).

Thereafter, on July 12, 2022, Defendants filed a letter enclosing a "self-explanatory email exchange" between the Parties' counsel and the New Jersey Department of Education ("NJDOE"). (ECF No. 7). Therein, Defendants' counsel inquires as to whom to direct a request for transmitting

---

[1] Plaintiffs has also attempted to appeal a separate decision by ALJ Gertsman that was issued as part of a distinct administrative proceeding bearing OAL Docket No. EDS 06354-20. However, that specific appeal was likewise part of a separate civil action in this Court and has since been disposed of by way of summary judgment. *See F.V. v. Cherry Hill Twp. Bd. of Educ.*, No. 1:21-CV-18096, 2023 WL 2662697 (D.N.J. Mar. 28, 2023) (hereinafter, "*F.V. I*"). Thus, the scope of the instant action entails only those decisions that were rendered in the administrative proceeding bearing OAL Docket No. EDS 01556-21. *See F.V. v. Cherry Hill Twp. Bd. of Educ. Members*, No. 22-4401, 2023 WL 2743998, at *1 (D.N.J. Mar. 31, 2023) (dismissing portions of the Complaint insofar as they were duplicative of *F.V. I*) (hereinafter, "*F.V. II*").

the administrative record to this Court (*Id.*) Upon receiving this information, Defendants' counsel copied Plaintiffs' counsel, Jamie Epstein, on another email to the NJDOE, enclosing the relevant case information and requesting that courtesy copies be provided to both Parties. (*Id.* at 4). In response to the email, Mr. Epstein objected, stating "[t]he appellant not the defendant has to file the administrative record [sic]." (*Id.*) Defendants' counsel countered that "[t]he NJDOE, as the agency from which the appeal has been taken, should file the administrative record with the [Court]." (*Id.* at 3).

### B. Plaintiffs' Purported "Administrative Record"

By way of a separate letter addressed to this Court dated July 21, 2022, Mr. Epstein again advised of Plaintiffs' previous filing of the purported administrative record. (ECF No. 13). However, this time, Mr. Epstein represented that he had "discovered additional records of the administrative proceedings[,] which are Volumes 13 and 14[.]" (ECF No. 13) (internal quotation marks omitted). Mr. Epstein purported to attach to this letter the indexes for these additional volumes. (ECF No. 13-1–13-2). Shortly after submitting this letter, Mr. Epstein filed on the docket what he previously represented were "Volumes 13 and 14" of the administrative record. (ECF Nos. 14, 14-1). However, unlike Plaintiffs' former filing, these portions of the purported administrative record contain the alleged contents of Volumes 13 and 14. (*Id.*) In total, Mr. Epstein purported to file fourteen volumes of the administrative record—Volumes 1 through 12 (which erroneously omit the actual contents of the record), and Volumes 13 and 14 (containing the recently "discovered" portions of the administrative record).

### C. Defendants' Cross-Motion to Strike

In response to Plaintiffs' subsequently filed Motion to Seal, Defendants submitted a Cross-Motion to Strike Plaintiffs' materials, arguing that "[t]he 14 volumes of materials electronically

3

filed by Mr. Epstein should not be accepted as the 'administrative record' because they are not, in fact, the administrative record." (*Id.* at 4). More specifically, Defendants informed the Court that Mr. Epstein had not only omitted sixteen exhibits from the administrative record, but that he had also included "hundreds of pages" that were either not presented to the ALJs or were not admitted into evidence. (*Id.* at 3). Notwithstanding these deficiencies, Defendants' counsel reassured that he had directed the NJDOE to retrieve and send to this Court a true and complete copy of the administrative record. (*Id.* at 4–5).

In opposition to Defendants' Cross-Motion, Mr. Epstein dodged entirely the propriety of his submission, and instead submitted that "it is the [Plaintiffs], not the [Defendants], who [are] required to file the record . . . with the merits brief." (*Id.* at 2).[2] During subsequent oral argument held before the Magistrate Judge, Mr. Epstein was simply "unable to confirm the accuracy of these submissions." (*Id.* at 9).

### D. The Magistrate Judge's Opinion and Order

On November 4, 2022, the Magistrate Judge issued an Opinion and Order granting Defendants' Cross-Motion to Strike the administrative record Mr. Epstein purported to file. (ECF No. 22). The Magistrate Judge first observed that there "is an absence of authority prescribing the precise manner in which the administrative record must be received by the Court." (*Id.* at 9). With respect to the propriety of the materials Plaintiffs' submissions, the Magistrate Judge did not find that Mr. Epstein's "inaccuracies or omissions" were "the result of intentional conduct," but noted that they were indeed "troublesome," even if they could be attributed to "human error." (*Id.*) Regardless, "[i]n light of the fact that the NJDOE has already provided the Court with a copy of

---

[2] In reality, Mr. Epstein actually failed to timely oppose Defendants' Cross-Motion, but had instead submitted a letter in advance of oral arguments before the Magistrate Judge, offering substantive arguments on the merits. (ECF No. 20).

4

the administrative record in this matter," the Magistrate Judge found "no good cause to consider Plaintiffs' submissions, which are challenged as incomplete and inaccurate." (*Id.* at 10).[3] For these reasons, the Magistrate Judge struck Mr. Epstein's filings and accepted the administrative record submitted by the NJDOE at Defendants' request.

### III.    STANDARD OF REVIEW

In the District of New Jersey, magistrate judges are authorized to hear and determine any pre-trial, non-dispositive motions in civil cases. *See* L. Civ. R. 72.1(a)(1); *see also* 28 U.S.C § 636(b)(1)(A). Consistent with that authority, magistrate judges routinely hear motions to strike or supplement portions of administrative records submitted as part of an appeal from an agency decision. *See, e.g.*, *McCann v. Unum Provident*, No. 11-3241 MLC, 2013 WL 5603913, at *1 (D.N.J. Oct. 11, 2013); *M.A. v. Jersey City Bd. of Educ.*, No. 14-6667, 2016 WL 7477760, at *14 (D.N.J. Dec. 29, 2016). Once a magistrate judge issues an order, the parties may, within fourteen days, appeal to the District Court for further review. *See* Fed. R. Civ. P. 72(a).

On appeal, the District Court may modify or set aside a magistrate judge's order, in whole or in part, where the order is either "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 579 (D.N.J. 2001) (internal quotation marks omitted). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. *See Bobian v. CSA Czech Airlines*, 222 F. Supp. 2d 598, 601 (D.N.J. 2002). However, when an appeal seeks

---

[3] In reaching this conclusion, the Magistrate Judge relied on Federal Rule of Civil Procedure 83(b) and Local Civil Rule 83.3, which together enable district courts to implement standards and procedures that ensure the fair and efficient administration of justice in the absence of contrary authority.

review of "a matter within the purview of the magistrate judge," an even more deferential "abuse of discretion" standard applies. *Koninklijke Philips Elec. N.V. v. Hunt Control Sys., Inc.*, No. 11-3684, 2014 WL 5798109, at *2 (D.N.J. Nov. 7, 2014). Under this standard, a magistrate judge commits error when her decision is "arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted." *Lopez v. Mercantile Adjustment Bureau, LLC*, No. 18-12490, 2019 WL 2118787, at *2 (D.N.J. May 15, 2019).[4]

## IV. DISCUSSION

In the instant appeal, Plaintiffs rigorously insist that they are the proper parties to file the administrative record in an IDEA action. (ECF No. 23-4 at 4–5). Defendants, however, maintain that "[t]he NJDOE, as the agency from which the appeal has been taken, should file the administrative record with the [Court]." (ECF No. 7-1 at 3). But while the Parties quibble over *who* is expected to file the administrative record, they completely overlook the question of *what* exactly Plaintiffs purported to file. In this Court's view, resolving Defendants' Cross-Motion to Strike requires a determination as to whether Plaintiffs had in fact filed the administrative record at all.

### A. Applicable Law

The IDEA is a "comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities." *M.A. ex rel E.S. v. State-Operated Sch. Dist.*, 344 F.3d 335, 338 (3d Cir. 2003). In exchange for federal funding, states pledge to "implement

---

[4] The fact that Plaintiffs appeal from a motion to strike—a matter which was within the Magistrate Judge's purview—strongly implies that this Court should only review for an abuse of discretion. Regardless, the Court is not convinced that the Magistrate Judge has erred at all, even under the less deferential "clearly erroneous or contrary to law" standard.

specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014). "These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to 'any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to such child[.]'" *Id.* (quoting 20 U.S.C. § 1415(b)(6)(A)). If parents are dissatisfied with the outcome of the due process hearings, they may "seek judicial review by filing an action in a competent state or federal court." *Y.B. on behalf of S.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 198 (3d Cir. 2021) (citing 20 U.S.C. § 1415(i)(2)).

The IDEA does not delineate any particular process by which litigants are expected to invoke this Court's judicial review. Rather, it merely provides that district courts "shall receive the records of the administrative proceedings." 20 U.S.C. § 1415(i)(2)(C)(i). But while the statute does not expressly define what these "records" entail, it does not leave such a question unanswered, but rather defers it to the state administrative procedures out of which the appeal arises. *See Batchelor*, 759 F.3d at 272 ("The IDEA's administrative process is conducted in compliance with state procedures."); *see also* 20 U.S.C. § 1415(f)(1)(A) (stating that due process hearings "shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency").[5] In New Jersey, the "record" of a due process hearing conducted in accordance with the IDEA includes "all decisions and rulings of the judge and all of the testimony, documents and arguments presented before, during and after the hearing

---

[5] Likewise, regulations promulgated by the U.S. Department of Education only indicate that a district court is to "[r]eceive[ ] the records of the administrative proceedings." 34 C.F.R. § 300.516(c)(1).

and accepted by the judge for consideration in the rendering of a decision." N.J. ADMIN. CODE § 1:1-2.1.[6]

### B. Defendants' Motion to Strike

According to Defendants, of the 1,423 pages of materials Mr. Epstein submitted to this Court and represented to be the "administrative record," he had (1) omitted sixteen exhibits that were entered into evidence and expressly relied on in ALJ Crowley's Final Decision, and (2) laced in "hundreds of pages" of materials that were never part of the administrative record (ECF No. 17-2 at 2–4). Despite the seriousness of these allegations, Mr. Epstein largely ignored them, but in any case was "unable to confirm the accuracy of [his] submissions." (ECF No. 22 at 9). In the absence of any defensible position to the contrary, this Court construes Mr. Epstein's obfuscation as a concession of Defendants' contentions.

Insofar as Mr. Epstein omitted any exhibits that were accepted and relied upon by the ALJs, the Court finds that he failed to file a true and accurate administrative record from the agency below. *See* N.J. ADMIN. CODE § 1:1-2.1 (describing "*all* decisions and rulings of the [ALJ]" as well as "*all of* the testimony, documents and arguments" that were both presented to and accepted by the ALJ "for consideration in the rendering of a decision") (emphasis added)). To the extent Mr. Epstein wished the Court to consider materials that were not part of the original record, the proper procedure was to file a "motion to supplement" the administrative record pursuant to the

---

[6] To be clear, determining the propriety of Plaintiffs' submissions requires defining the proper scope of the "records of the administrative proceedings" anticipated by the IDEA—a consideration which, as the statute clarifies, must be made with reference to New Jersey's Uniform Administrative Procedure Rules ("NJUAPRs") governing IDEA due process hearings. *See* N.J. ADMIN. CODE § 6A:14-2.7 (providing that due process hearings under the IDEA shall be conducted by administrative law judges in the New Jersey Office of Administrative Law (the "NJOAL")); *see also id.* § 1:1-1.1 ("[T]his chapter shall govern the procedural aspects pertaining to transmission, the conduct of the hearing and the rendering of the initial and final decisions in all contested cases[.]"). From this perspective, the scope of the "records of the administrative proceedings," though not expressly defined by the IDEA, is in fact determined by the NJUAPRs. *See id.* § 1:1-2.1.

8

IDEA's "additional evidence clause." *See Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 759 (3d Cir. 1995); s*ee also* 20 U.S.C. § 1415(i)(2)(C)(ii) (directing courts to "hear additional evidence at the request of a party," but which was not part of the original administrative record).

For all of these reasons, the Court finds that the Magistrate Judge did not err when she struck the materials Plaintiff filed and represented to be the administrative record from the agency below.[7]

### C. Defendants' Submission

In striking Plaintiffs' materials, the Magistrate Judge also accepted a physical copy of the administrative record submitted, at Defendants' request, by the NJDOE. The Magistrate Judge reasoned that relying on Defendants' submission, as opposed to Plaintiffs', would "best secure a just determination in this matter," "undoubtedly simplify procedure," "ensure that neither party is subjected to unjustifiable expense or delay," and "enable the parties to devote their full time and resources to litigating the merits of this case." (ECF No. 22 at 10). But while this Court did indeed receive a physical copy of the administrative record from the NJDOE, it is not quite of the quality or accuracy the Magistrate Judge envisioned. To the contrary, the Court has received massive bundles of unmarked, unpaginated, and unindexed exhibits, haphazardly bound together in no sensible order. This is quite obviously unacceptable, particularly given that this is also the record on which Defendants have separately based their pending Motion for Summary Judgment, unopposed as it may be.[8]

---

[7] In any case, striking Volumes 1 through 12 of the purported record was undoubtedly proper because Mr. Epstein failed to file any materials whatsoever.

[8] The Court has separately admonished Mr. Epstein for failing to oppose the Motion for Summary Judgment filed in *F.V. I*, which has since been granted on the merits.

Although there is no procedural rule delineating precisely the manner in which an administrative record is to be organized and presented, this Court is certainly under no obligation to "scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact and make the parties' arguments for them." *Christine C. v. Hope Twp. Bd. of Educ.*, No. 18-03984, 2021 WL 363743, at *1 (D.N.J. Feb. 2, 2021) (quoting *Holland v. New Jersey Dep't of Corrections*, 246 F.3d 267, 285 (3d Cir. 2001)) (internal quotation marks omitted) (omissions in original). "[J]udges are not like pigs, hunting for truffles buried in the record." *Atkins on behalf of Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) (internal quotation marks omitted). And while the Magistrate Judge properly struck Plaintiffs' materials, the sheer unwieldiness of the administrative record Defendants caused to be submitted leads this Court to reject it as well.[9] For these reasons, the Court finds it necessary to remand this matter to the Magistrate Judge to oversee the Parties' joint submission of a proper administrative record.[10]

---

[9] Unwieldiness aside, the administrative record is also rejected for the simple fact that it was filed neither electronically nor by Defendants' counsel. *See* L. Civ. R. 51(2) ("All civil, criminal, miscellaneous cases and documents filed in this Court, will be entered into the Court's ECF System in accordance with these Procedures."); *see also* Fed. R. Civ. P. 11 (requiring courts to strike submissions unless they are "signed by at least one attorney of record in the attorney's name"). The Magistrate Judge correctly observed that judges in this District have not consistently required any one party to file the administrative record in IDEA appeals. *Compare K.K-M v. New Jersey Dep't of Educ.*, No. 17-11579, 2020 WL 6817506, at *8 (D.N.J. Nov. 20, 2020) (placing obligation of filing administrative record on defendant as the movant for summary judgment) *with M.N. v. Sparta Twp. Bd. of Educ.*, No. 21-19977, 2022 WL 1093667, at *3 n.2 (D.N.J. Apr. 12, 2022) (suggesting that either party may submit the administrative record from the NJOAL). Although the law apparently permits either party to undertake the filing of the record, it certainly does not permit non-parties to do so. This is to say that when parties elect to file administrative records themselves, the directives of Federal Rule of Civil Procedure 11 still govern those submissions. And even assuming, as Defendants have suggested, that "the agency from which the appeal has been taken" should file the administrative record (ECF No. 17-5 at 24), that is certainly not the NJDOE here, but rather the NJOAL. *See* N.J. ADMIN. CODE § 6A:14-2.7 (providing that due process hearings under the IDEA shall be conducted by the NJOAL). As far as the Court is concerned, the NJDOE is a non-party that should have never been permitted to submit these materials, even it was directed to do so by Defendants' counsel.

[10] In the absence of a proper administrative record, Defendants' pending Motion for Summary Judgment (ECF No. 26) is quite clearly premature and is, as a result, denied without prejudice to renewal upon the proper filing of the administrative record. *See L.J. v. Audubon Bd. of Educ.*, No. 06-5350, 2008 WL 4276908, at *3 (D.N.J. Sept. 10, 2008) (noting prior dismissal of defendant's motion for summary judgment without prejudice because the court "was unable to address the merits of [d]efendant's motion in the absence of the administrative record"). However, in all future submissions, Defendants—as well as Plaintiffs—are explicitly instructed to clearly, accurately, and specifically cite to the administrative record that is ultimately filed.

## V. CONCLUSION

For the reasons articulated above, the Magistrate Judge's Opinion and Order are affirmed insofar as they struck Plaintiffs' purported filings of the administrative record from the agency below. However, to the extent the Magistrate Judge made any finding as to the administrative record Defendants caused to be submitted, the Court modifies the Opinion and Order and directs counsel for the Parties to meet and confer for the purpose of resolving the filing of the administrative record. Consistent with this directive, the Court remands this matter to the Magistrate Judge to manage the Parties' joint submission of a proper administrative record.[11]

Date: June 16, 2023

                                                          */s/ Karen M. Williams*
                                                          KAREN M. WILLIAMS
                                                          U.S. DISTRICT COURT JUDGE

---

[11] Because the law does not place the burden of filing the administrative record on any one party, requiring a joint submission here is not inconsistent with the IDEA. In any case, it is surely consistent with the Parties' expectations, given their apparent eagerness to file the record.